**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LESLIE M. PARTEM, M.D. | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| NATIONAL BOARD OF MEDICAL EXAMINERS | : | |
| | : | |
| and | : | |
| | : | NO. 06-2019 |
| FEDERATION OF STATE MEDICAL BOARDS | : | |
| OF THE UNITED STATES, INC. | : | |
| | : | JURY TRIAL DEMANDED |
| and | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| BUREAU OF PROFESSIONAL  AND | : | |
| OCCUPATIONAL AFFAIRS | : | |
| STATE BOARD OF MEDICINE | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S  MOTION FOR A PRELIMINARY INJUNCTION**

## I.      INTRODUCTION

Plaintiff, Leslie M. Partem, M.D., who obtained her medical degree in the former

Soviet Union, is currently in her second year of the Family Practice Residency Program

at the Bryn Mawr Hospital in Bryn Mawr, PA. (Complaint, ¶24). On June 30, 2006 Dr.

Partem's employment agreement at the Bryn Mawr Hospital will terminate, and she will

be unable to commence the third year of the Family Practice Residency Program, because

Defendant National Board of Medical Examiners ("NBME") reported that she failed, by

one point, the USMLE Step 3 examination which she took in July, 2005.(Complaint,

¶45).   The USMLE is jointly administered by the NBME and the Federation of State

Medical Boards (FSMB). (Complaint, ¶s 14, 15 & 60).

Dr. Partem contends that the NBME should have given her a passing score on the USMLE Step 3 examination, and has obtained the opinion of a medical expert whose conclusions regarding the NBME's scoring of her responses to certain examination questions supports her contention. (Complaint, ¶s 33 & 37).[2]  However, without examining the report of Dr. Partem's expert, the NBME denied her requests that it rescore her USMLE Step 3 examination. The NBME contends that the examination questions at issue (case simulations) were "pretest items and cases not used in the scoring and reporting of results."   The Pa. State Board of Medical Examiners denied a request that Dr. Partem be permitted to apply for Pennsylvania licensure without restriction notwithstanding the reported result of her USMLE Step 3 examination, or that it give her a hearing on her claims concerning the NBME's handling of the examination.

By regulation, the Pa. State Board of Medical Examiners delegates to the NBME and the FSMB the authority to design, administer and score medical examinations the passing of which are prerequisites to obtain various  licenses to practice medicine in the Commonwealth of  Pennsylvania, including an unrestricted license.  (Complaint, ¶s 17, 18, 21, 53 & 60).  In this lawsuit, Dr. Partem alleges that the above-referenced actions of the defendants, including but not limited to the refusal of the Pa. State Board of Medical Examiners to give her a hearing on her claims, violate the Fourteenth Amendment to the United States Constitution.

The action which is about to occur insofar as Dr. Partem's residency at the Bryn Mawr Hospital  is based exclusively on the aforesaid  actions of the defendants. That

---

[2] For a discussion of the three-steps of the USMLE (in the context of appellate review of requests for preliminary injunctions against the NBME in Americans with Disabilities Act cases) see, John Doe v. National Board of Medical Examiners, 199 F.3d 146 (3rd Cir. 1999); Gonzales v. National Board of Medical Examiners, 225 F.3d 620 (6th Cir. 2000), cert. den., 532 U.S. 1038, 121 S. Ct. 1999, 149 L.Ed.2d 1002 (2001). Also see, Powell v. National Board of Medical Examiners, 364 F.3d 79 (2nd Cir. 2004).

action cannot be reversed, remedied, or otherwise undone should Dr. Partem prevail on

the merits of her claims. That is, there is no remedy which this Court could fashion in the

future which would return Dr. Partem to the exact situation in which she currently stands.

Hence Dr. Partem seeks an Order preliminarily enjoining actions of the defendants which

will result in her expulsion from her residency program on June 30, 2006 without having

had an opportunity to present her claims regarding the examination in an appropriate

forum.

## II.      STANDARDS FOR ISSUANCE OF A PRELIMINARY INJUNCTION

The Third Circuit has held that:

> Federal Rule of Civil Procedure 65 permits a court to grant
> a preliminary injunction if the moving party demonstrates a
> likelihood of success in the litigation, and that he will
> suffer great or irreparable injury absent an injunction.

Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998)

This Court,  in ACLU v. Reno,  929 F.Supp. 824, 857 (E.D.Pa. 1996),

aff'd, 521 U.S. 844 (1997), stated as follows:

> To obtain a preliminary injunction, plaintiffs must establish that
> they are likely to prevail on the merits and that they will suffer
> irreparable harm if injunctive relief is not granted.  We also must
> consider whether the potential harm to the defendant from issuance
> of a temporary restraining order outweighs possible harm to the
> plaintiffs if such relief is denied, and whether the granting of
> injunctive relief is in the public interest. [citations omitted]

929 F.Supp. at 851.  These criteria are addressed infra.

## III.      THE RELIEF SOUGHT BY THIS MOTION

Dr. Partem's claims regarding Step 3 of the USMLE involve technical medical

issues. It is appropriate to have those claims heard and addressed by the Pa. State Board

of Medical Examiners ("State Board"). However, the State Board refused to give Dr.

Partem a hearing on her claims. The relief sought by this motion is an Order compelling

the State Board to hear and address Dr. Partem's claims, and requiring the NBME and

FSMB to cooperate and participate in said proceedings. Also, because Dr. Partem's

residency program intends to terminate her contract because of actions of the defendants,

she seeks to have the Court include in its Order a requirement that said defendants inform

the residency program that the previously-reported NBME Step 3 scores are rescinded

pending the adjudication of her claims.

## IV.    PLAINTIFF  CAN SHOW IRREPARABLE HARM

"When an alleged deprivation of a constitutional right is involved, most courts

hold that no further showing of irreparable injury is necessary."  11A Wright, Miller &

Kane Federal Practice and Procedure, §2948.1 p. 161 (West 1995) and pocket part p. 15,

citing, inter alia, Abu-Jamal v. Price, supra, 154 F.3d at 136. Once it is established that

constitutionally-protected rights are likely to be infringed, that threat is, in and of itself,

deemed to be irreparable harm. ACLU v. Reno, supra.,  929 F.Supp. at 851.

In the instant case, plaintiff can demonstrate a likely violation of Constitutional

rights, including but not limited to the right to have a hearing in connection with a

determination by the State that despite her fulfillment of the conditions precedent to the

issuance of an unrestricted license to practice medicine, she is nonetheless ineligible for

the immediate issuance of such license.  A conclusion of irreparable harm necessarily

follows.

In addition, under 49 Pa. Code §17.12c(b), quoted *infra.,* three failures of Step 3

of the USMLE requires an individual to repeat a year of graduate medical training at the

first or second-year level. That is certainly professional harm which cannot be undone, or compensated for in damages. Also, according to Dr. Partem's attached Affidavit of Immediate and Irreparable Harm, she fears that her career may be ruined. <u>See</u>, Affidavit, ¶16(e).

**V.     PLAINTIFF IS LIKELY TO PREVAIL ON THE MERITS**

**A.     Summary of Argument**

To have a property interest which is protected by the procedural component of the Due Process Clause of the 14th Amendment, a person must have more than an abstract interest in a benefit. Instead the person must have a legitimate *claim of entitlement* to a property interest or benefit, which entitlement is derived from state law. <u>Town of Castle Rock, Colorado v. Gonzales</u>, ____ U.S. ____, 125 S.Ct. 2796, 162 L.Ed. 2d 658, 668 (2005), citing <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Where under state law state officials have the discretion to deny the entitlement, it may not necessarily be protected under the 14th Amendment. <u>Town of Castle Rock</u>., <u>Id</u>., 162 L.Ed.2d at 669.

The right to practice medicine in the Commonwealth of Pennsylvania, including licensing requirements, is governed by the Pennsylvania Medical Practice Act of 1985, *as amended*, , 63 Pa. C.S. §§422.1, <u>et seq</u>. (hereinafter "Act"), and regulations promulgated pursuant thereto at 49 Pa. Code, Chapter 17, §§17.1, *et seq*. Section 422.25(a) of the Act provides, in relevant part, as follows:

> §422.25. Licenses and certificates; biennial registration
>
> (a) ISSUANCE OF LICENSES AND CERTIFICATES.--
> All applicants who have complied with the requirements of the board
> and who have passed a final examination and who have otherwise
> complied with the provisions of this act *shall receive from the*

5

> *commissioner*, or whoever exercises equivalent authority acting for the
> board, a license or certificate entitling them to the right to practice in this
> Commonwealth.
> [Emphasis added]

Dr. Partem complied with all requirements of the board and passed a final examination, namely Step 3 of the USMLE. Notwithstanding the position of the NBME that she missed, by one point, a passing score on Step 3 of the USMLE, Dr. Partem has evidence that she indeed achieved a passing score as defined by the NBME. Accordingly, by letter dated April 11, 2006 from her attorney to the State Board,  Dr. Partem requested to apply for a license without restriction via endorsement pursuant to 49 Pa. Code §17.2(a). Alternatively, in said letter Dr. Partem requested that the Board promptly refer the matter for  a hearing for purposes of receiving and evaluating Plaintiff's  evidence concerning the 2005 administration and scoring of her USMLE Step 3 examinations, and deciding whether said evidence warrants  waiver by the Board of the requirement of 49 Pa. Code §17.12c(b).  (Complaint, ¶47 and Exhibit "E" attached thereto). In that letter, Dr. Partem also requested prompt action by the Board because of the proximity of the June 30, 2006 termination of her contract with the Bryn Mawr residency program. By letter dated April 19, 2006, the State Board denied the requests. (Complaint, ¶48 and Exhibit "F" attached thereto).

The above-quoted language of §422.25(a) of the Act makes clear that Dr. Partem "shall receive" a license upon fulfillment of the Board's requirements. The language leaves no room for a discretionary exercise of the license issuing obligation upon presentation of evidence that the requirements have been met. Hence Dr. Partem has a

legitimate claim of entitlement to a property interest, i.e., an unrestricted license to practice medicine in the Commonwealth,  which entitlement is derived from state law. She has been deprived of that entitlement without due process.[3]

**B.      Argument**

      **1.      Dr. Partem has met the licensure requirements of state law**

The Act, §422.24 (Examinations) provides in relevant part as follows:

      **§422.24.      Examinations**

           ***

      (d) Examining Agency. – When the board accepts an examination given by an examining agency, the board may establish the criteria for passing, or may accept the criteria for passing, established by the examining agency. If the examination is offered in parts, the board may establish, by regulation, a time period in which the entire examination must be successfully completed. The board may establish, by regulation, a maximum number of examination attempts it will recognize for the purpose of receiving a passing score on an examination recognized but not given by the board.

The State Board, by regulation, designates the USMLE as one of the examinations available pursuant to the above-quoted section of the Act. The regulation, 49 Pa. Code §17.11(d), provides in relevant part as follows:

---

[3] Actions (or inactions) by the State Board are generally subject to appellate review by the Commonwealth Court of Pennsylvania. 2 Pa. C.S. §702 (appeals); 42 Pa. C.S. §5105 (right to appellate review). However, the only parties permitted to participate in such appeals are the appellant and the State Board. See, Pa. R.A.P. 1511, et seq. Moreover, it is not at all clear that the type of "inaction" challenged here would be cognizable under Pennsylvania law because an agency "inaction" which constitutes a  determination subject to appeal is defined by what "action" the agency is required to take pursuant to  statute or regulation. Nonetheless, had Dr. Partem, by attempting to appeal the State Board's inaction, sought an Order of the Commonwealth Court requiring the State Board to hold a hearing, the only  injunctive relief she could have requested would be limited to the State Board.  See, Pa. R.A.P. 1532(a)("Special relief"). Assuming the Commonwealth Court ordered the State Board to hold the hearing, the only "party" who would be permitted to participate as a "party" at the hearing would be Dr. Partem. Formal pre-hearing discovery of essential evidence from the NBME and FSMB would be limited to that which can be obtained immediately prior to the hearing via subpoena. Hence there does not appear to be a procedural mechanism under Pennsylvania law relating to an appeal of  inaction by the State Board to obtain both the participation by, and to seek the preliminary injunctive relief herein sought,  against the NBME and FSMB. If the preliminary injunctive relief sought in the instant action is granted, the NBME and FSMB would be required to participate in the State Board proceedings ordered by this Court, and any aggrieved party would have the right to appeal to the Commonwealth Court.

### §17.11.          Examination information for license without restriction

***

(d)      *USMLE.* This examination is a uniform examination for licensure…Each step is given twice a year. To be eligible for Step 1 or 2 of the examination, an individual shall be a medical student officially enrolled in, or a graduate of, an accredited  medical school…To be eligible for Step 3 of the USMLE, the individual shall have  obtained a medical doctor degree or equivalent, shall have achieved a passing score on both Step 1 and Step 2 or equivalent, and shall be enrolled in a graduate medical training program….All steps of the examination shall be completed within 7 years. *A passing score on this examination satisfies the examination requirement for a license without restriction.* [Emphasis added]

Dr. Partem passed Steps 1 and 2 of the USMLE on December 11, 1998 and May 17, 2000, respectively. Having begun her USMLE testing in December, 1998, her 7-year period for completing all three steps of the USMLE ended in December, 2005. See, Partem Affidavit at ¶8. The various steps of the USMLE may be retaken. However, failure to achieve passing scores on all three steps of the USMLE the USMLE within the prescribed time requires the individual to repeat a year of graduate medical training. The applicable section of the regulations provides as follows:

### §17.12c.       Failure on USMLE

(a) *Retaking examination.* An individual is permitted to retake any Component of the USMLE. Steps 1, 2 and 3 shall be completed within a 7-year period. Because Steps 1 and 2 may be taken in any sequence, the 7-year period begins with the passage of the first step taken.

(b) *Repeating year of graduate medical training.* If an individual fails to secure a passing score on Step 3 in a third attempt, the individual shall repeat a year of graduate medical training at a first or second-year level before retaking Step 3.

Dr. Partem took Step 3 of the USMLE for the first time in July, 2005 and was given scores of 74 (overall exam performance) and 182 (Step 3 exam performance) on a scale which defined scores of 75 and 184, respectively, as recommended passing scores.

She took Step 3 again in December, 2005 and was given scores of 74 (overall exam performance) and 183 (Step 3 exam performance) on a scale which defined scores of 75 and 184, respectively, as recommended passing scores. See, Partem Affidavit at ¶10.[4] However, the NBME, which produces and scores the USMLE, describes its passing scores as recommendations. See, USMLE Bulletin of Information, 2006, p. 28 ["Minimum Passing Scores: The USMLE program provides a *recommended* pass or fail outcome on all Step examinations."(emphasis added)].  In its Step 3 Score Reports, the USMLE describes its passing scores as "recommended". Moreover, in its Step 3 Score Reports, the NBME gives a standard error of measurement ("SEM") for each score, which SEM is 3 to 7 points. Those recommendations are recommendations to the various state licensing authorities. Hence, a "passing score" on the USMLE as defined in the above-referenced regulations is whatever the State Board wants it to be, within its discretion. In light of the fact that the NBME merely recommends a passing score, and Dr. Partem's scores are one point away from the NBME's recommendations, well within the SEM's, it does not appear that it would be an affront to the NBME, or the integrity of the USMLE, if the State Board deemed Dr. Partem as having passed Step 3. Unfortunately, the resounding reasonableness of Dr. Partem's argument in this regard is of little moment if the State Board will not listen to it. Her plea has fallen on deaf ears.

Dr. Partem possesses a "graduate license" issued pursuant to 49 Pa. Code §17.5. She is currently in her second year of training in the Family Practice Residency Program at Bryn Mawr Hospital. She qualified for participation in graduate medical training at the second-year level by passing Steps 1 and 2 of the USMLE. See, 49 Pa. Code §17.5(d).

---

[4] Dr. Partem took the Step 3 examination again on May 1, 2006 and obtained the same scores, on the same rating scales.

Dr. Partem is now ready to participate in graduate medical training at the third level and

higher. 49 Pa. Code §17.5(e) provides, in relevant part, as follows:

> **§17.5. Graduate license.**
>
> ***
>
> (e)      To participate in graduate medical training at a third-year level
> or higher, the licensee shall secure a passing score on…Step 3 of the
> USMLE…or hold a license to practice medicine without restriction
> in this Commonwealth…

The requirements for a license without restriction are set forth in §§17.1 and 17.2.

**§17.1.          License without restriction.**

> (a)      Except as provided in §17.2 (relating to license without restriction-
> endorsement), to secure a license without restriction an applicant shall:
>
> > (1)  Have passed a licensing examination acceptable to the Board by
> > having achieved one of the following:
> > > (i)  A passing score on Step 1, Step 2 and Step 3 of the USMLE,
> > > as determined by USMLE completed within a 7-year period.

**§17.2.          License without restriction – endorsement**

> (a)      *Other qualifications*.  The Board will grant a license without
> restriction to an applicant who does not meet the standard license requirements
> enumerated in §17.1 (relating to license without restriction), if the applicant has
> achieved cumulative qualifications which are endorsed by the Board as being
> equivalent to the standard requirements for the license.[5]

Thus, assuming Dr. Partem is correct in her claim that she actually passed Step 3

of the USMLE, she has met all of the requirements for a license without restriction.

Under §422.25 of the Act, the Board has a mandatory obligation to issue the license:

> **§422.25. Licenses and certificates; biennial registration**
>
> (b) ISSUANCE OF LICENSES AND CERTIFICATES.--

---

[5] In the aforementioned April 11, 2006 letter to the State Board Dr. Partem, through counsel, alternatively requested that the Board issue to her a license without restriction by endorsement, pursuant to this section. Before coming to the United States, Dr. Partem practiced medicine in the former Soviet Union for 11 years after graduating  from, and also while attending, several very prestigious medical universities and institutes. See, Partem Affidavit, ¶3. The State Board did not mention or address that request in its response.

> All applicants who have complied with the requirements of the board
> and who have passed a final examination and who have otherwise
> complied with the provisions of this act *shall receive from the*
> *commissioner*, or whoever exercises equivalent authority acting for the
> board, a license or certificate entitling them to the right to practice in this
> Commonwealth.
> [Emphasis added]

### 2. Dr. Partem should not be deprived of her statutory entitlement to licensure without a hearing before the State Board

In the letter to the State Board dated April 11, 2006, Dr. Partem, through counsel, requested that "…this matter be promptly referred to a hearing examiner for purposes of a hearing on whether Dr. Partem's evidence concerning the 2005 administration and scoring of her USMLE Step 3 examinations warrant (1) waiver by the Board of the requirement of 49 Pa. Code §17.12c(b); and (2) the Board's granting of leave to Dr. Partem and Bryn Mawr Hospital to apply for licensure by Board endorsement pursuant to 49 Pa. Code §17.2(a)." Complaint, ¶47. In its response, the Board ignored the hearing request. Complaint, ¶48.

Indeed, there is no provision of the Act or the regulations which clearly entitles Dr. Partem to a hearing under these circumstances, e.g., to contest examination results. That is why she is in this Court. The clear legal entitlement, derived from state law, upon which plaintiff bases her due process claim is not a state entitlement to a hearing. It is an entitlement to a license. The medical license is property to which Dr. Partem, having met all statutory and regulatory requirements, is now entitled. It is a fundamental precept of 14th Amendment Due Process Clause jurisprudence that an individual is entitled to a hearing before being deprived of, or denied, property or entitlements vested by state law. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The defendants have taken the position that Dr. Partem is not yet entitled to the license. They claim she has not yet passed Step 3 of the USMLE. Dr. Partem contends that she *has* passed Step 3, based on her responses in the July, 2005 examination, and stands ready to prove it. She has obtained expert witnesses to assist her in that effort. If Dr. Partem is denied a hearing, she is denied her opportunity to prove she is correct, and thus to prove her entitlement to licensure. The NBME and the FSMB will, undoubtedly, seek to end this matter by telling this Court what they have told Dr. Partem, e.g., (1) their statement that she did not pass should be taken at face value and deemed to be true just because they say so, and (2) we should also accept at face value, without further inquiry, the NBME's statement that Dr. Partem's responses to the two case simulations on the July, 2005 exam, the scoring of which she challenges, were not counted because they were "pretest questions". Dr. Partem does not accept those statements at face value and respectfully suggests that neither should this Court. For example, a lawyer taking a bar examination, or a real estate agent taking an agent's exam, would certainly be alarmed to learn that some exam questions were intentionally designed not to be counted. Dr. Partem approached all of the examination's case simulations with the same expectation that her responses would affect her final score. She would certainly be so led to believe by language in the USMLE Bulletin of Information, such as:

> For Step 3, your performance on the case simulations will affect your Step 3 score and could affect whether you pass or fail.
> [USMLE Bulletin of Information (2006), p. 28].

Dr. Partem also claims certain injuries to her reputation arising out of defendants' actions. Such injuries may also be cognizable under the 14th Amendment.

"[T]he requirement of due process has been said to arise so long as an individual has suffered a deprivation of protected 'liberty' or 'property' interests, which themselves have been deemed to depend on the existence of an independently-grounded right." McKnight v. SEPTA, 583 F.2d 1229, 1235 (3rd Cir. 1978)(emphasis added)(citations omitted). The "liberty" interest includes *an individual's "good name, reputation, honor, or integrity…"* Id., quoting Board of Regents v. Roth, supra., 408 U.S. 564 at 573, 92 S.Ct. 2701 at 2707.(emphasis added)

In sum, having complied with all of the statutory and regulatory requirements for licensure, Dr. Partem should not be deprived of an opportunity, at a hearing, to demonstrate that she passed Step 3 of the USMLE and therefore should be issued a license without restriction. For state authorities and their agents to argue otherwise makes them appear to be akin to the state authorities in the country from which Dr. Partem and her daughter fled. Certainly it is not too much to ask that we take this opportunity to demonstrate that in this country we do things differently.

### 3.  The possible harm to Dr. Partem if injunctive relief is denied outweighs the potential harm to defendants if such relief is granted.

Another  element of the Court's mandatory considerations in determining whether to grant preliminary injunctive relief is whether the from denial of the injunction outweighs the harm, if any, to the non-movant if  such relief is granted. In the instant case, the harm to Dr. Partem resulting from the denial of a preliminary injunction, as detailed hereinabove,  is palpable. Under 49 Pa. Code §17.12c(b), having been told that she failed Step 3 three times, Dr. Partem is required to repeat the second year of residency training before being eligible to retake Step 3. However, Dr. Partem  has been informed that her residency training agreement with the Bryn Mawr Hospital ends on

June 30, 2006, solely because of her reported Step 3 score.  Also see., ¶2 of Dr. Partem's Affidavit of Immediate and Irreparable Injury. It is difficult to fathom any harm to the defendants  resulting from a preliminary injunction at all, much less harm  which would compare to the harm which is about to befall Dr. Partem.

4.   **The granting of a preliminary injunction is in the public interest**

The final element of the Court's mandatory considerations in determining whether to grant preliminary injunctive relief is whether the granting of same would be in the public interest, or anathema to the public interest. In the instant case, granting a preliminary injunction would clearly be in the public interest. It will permit a hearing on claims involving the manner in which the Commonwealth and the NBME administers the licensing examinations for physicians. It may even result in changes in the administration of the examination and the reporting of scores. Perhaps it will lead to clarifications in the USMLE Bulletins and the regulations of the State Board. There are many positive developments which could result from this litigation. The issuance of a preliminary injunction granting the narrowly-tailored relief requested would manifestly be in the public interest.

5.   **The NBME and the FSMB are state actors for purposes of §1983**

It is anticipated that either the NBME and/or the FSMB will contest their alleged status as state actors for purposes of jurisdiction under 42 U.S.C. §1983. The NBME appears to be incorporated  (see, 49 Pa. Code  §16.1) and is alleged in the Complaint to be "a non-profit nationwide organization consisting of individuals and representatives of organizations in various health, medical education, evaluation and practice professions, organized and existing primarily to provide examinations and assessments for the various

health professions." Complaint, ¶5.  The FSMB is alleged to be "an incorporated national organization comprised of the approximately 70 medical boards of the United States (including the Pennsylvania State Board of Medicine)…" Complaint, ¶6.  <u>Also see</u>, 49 Pa. Code  §16.1. Hence the FSMB is alleged to include the State Board itself, a state agency, as a constituent member, though this does not end the inquiry concerning whether, functionally, the FSMB is a state actor for purposes of  §1983.

In considering whether a private defendant acted under "color" of state law for purposes of federal court jurisdiction under 42 U.S.C. §1983, the Court may generally examine a number of issues including:

1.   Whether the private defendant acted in concert with a state actor, or whether an agreement existed between the two.

2.   Whether the private defendant aided and abetted the actions of a state actor.

3.   Whether there exists a sufficiently close nexus between the state and the challenged action of the private actor such that the actions of the latter may be fairly treated as that of the state itself. Here the central issue is not necessarily whether the state was involved in some way in the challenged events, but whether the action itself can fairly be attributed to the state.

4.   Whether, by acting pursuant to state law, the private actor exercised authority possessed by virtue of the state law and made possible only because of the state law.

5.   Whether the private defendant has received significant aid, financial or otherwise, from the state.

6.   Whether the private defendant willfully collaborated with a state official, or was "jointly engage" with a state official.

7.   Whether the state ceded to the private defendant the state's authority to make a determination which the state has the discretion to make by virtue of state law.

The above factors appear to be a fair summarization of the law on the subject

crystallized from a number of cases including  Commonwealth of Pennsylvania, Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 2753, 73 L.Ed.2d 482 (1982); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970); D'Aurizio v. Palisades Park, 963 F. Supp. 387 (D.N.J. 1997), aff'd., 151 F.3d 1024 (3rd Cir. 1998), cert. den., 525 U.S. 870, 119 S.Ct. 166, 142 L.Ed.2d 135 (1998); Chalfont v. Wilmington Institute, 574 F.2d 739 (3rd Cir. 1978); Anderson v. Consol-Pennsylvania Coal Co., 740 F. Supp. 1126 (W.D. Pa. 1990), aff'd., 945 F.2d 394 (3rd Cir. 1991); Gilliam v. Nat'l. Commission for Certification of Physician Assistants, Inc., 727 F. Supp. 1512 (E.D. Pa. 1989), aff'd., 898 F.2d 140 (3rd Cir. 1990), cert. den., 495 U.S. 920, 110 S.Ct. 1950, 109 L.Ed.2d 312 (1990); Martinez-Velez v. Simonet , 726 F. Supp. 891 (D. Puerto Rico 1989), aff'd., 919 F.2d 808 (1st Cir. 1990)(Board of State Medical Examiners); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3rd Cir. 1994).

Though not directly on point, in a case involving the Pa. Medical Practice Act, the Third Circuit first addressed the issue of whether a medical accrediting organization, whose accrediting authority is derived from state law, can be deemed a state actor for purposes of 42 U.S.C. § 1983, in McKeesport Hospital v. The Accreditation Council for Graduate Medical Education, et al., 24 F.3d 519 (3rd Cir. 1994). In discussing the "state action" liability of private organizations, the Court observed that this determination is "necessarily a fact bound inquiry". Id., 24 F.3d at 523 (quoting  Commonwealth of Pennsylvania, Lugar v. Edmondson Oil Co. supra). In vacating the District Court's grant of a preliminary injunction, the Third Circuit rejected the lower court's contention that the Pa. State Board of Medicine delegated its statutory accreditation authority to the Accreditation Council. Instead, the Court focused on the fact that the ultimate authority to

accredit hospitals remains with the State Board notwithstanding the authority to make an initial accreditation decision delegated to the Council by state regulation. The Court stated that the "evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state function." Id., 24 F.3d at 526. Finally, the Court concluded that in order to characterize the Council's decision as state action, there must be either overt coercion over its actions by the state, or significant encouragement, by the state, overt or covert, over the Council's actions. Id.

Though concurring in the Court's judgment, the late Judge Becker took strong exception to the majority's conclusion that there was no state action in the Council's accreditation decision. Judge Becker wrote that "Pennsylvania has totally ceded any meaningful responsibility to conduct reviews of residency programs to the Accreditation Council…and has delegated to [the Council] the power to find the critical facts that are necessary for the Pennsylvania State Board of Medicine to determine whether a residency program satisfies the board's standards." Id.

In McKeesport Hospital, unlike in the instant case, the Third Circuit had the advantage of an intervening decision by the Pa. Commonwealth Court, arising from an appeal by the Hospital of the Board's decision to dismiss the Hospital's appeal to the Board of the Council's accreditation decision. The Commonwealth Court held that the plain language of the Act makes the Board "the final arbiter of matters involving the accreditation of medical training facilities in Pennsylvania." Id., 24 F.3d at 523. In the instant case, despite Dr. Partem's request of April 11, 2006, the Board took no action reviewable in the state appellate courts. See, footnotes 2 and 4, supra.

As to the applicability of the majority's analysis in <u>McKeesport Hospital</u>, the determination of licensing standards for medical doctors in this country has always been a state function. Dr. Partem has met all standards set forth in Pennsylvania law for an unrestricted license to practice, and would so qualify but for the apparently unreviewable determination of the NBME that she did not pass Step 3 of the USMLE. But more importantly, as pointed out hereinabove, the NBME characterizes its definition of "passing score" as a "recommendation" to state authorities. In her attorney's letter of April 11, 2006 to the State Board, Dr. Partem challenged that definition in the context of the score assigned to her by the NBME. In response, the State Board wrote:

> The Pennsylvania State Board of Medicine cannot waive exam
> scores set by the National Board of Medical Examiners and the
> Federation of State Medical Boards. The Board has *no jurisdiction*
> regarding now the exams are administered and scored. [Emphasis
> added].
> <u>See</u>, Complaint, ¶48 and Exhibit "F" attached thereto.

Not only does this statement of the State Board blatantly contradict the "recommendation" representations of the NBME with respect to its scores, it flies in the face of the language of 422.24 of the Act which provides, in relevant part that "the board *may* establish the criteria for passing, or *may* accept the criteria for passing, established by the examining agency". [Emphasis added]. Certainly the Act gives the State Board the "jurisdiction" to determine what is or is not a passing score. Necessarily derivative of that jurisdictional authority is the right to review how exams are administered and scored. Thus in the instant case, unlike in <u>McKeesport Hospital</u>., <u>supra</u>., the State Board has cloaked the NBME with the *final authority* to make a determination which traditionally, and by Pa. law, is a state function, <u>e.g.</u>, whether a doctor has in fact met a requirement for licensure.

Accordingly, a number of the aforementioned seven (7) factors to be examined by the Court in determining whether the private entity is engaged in "state action" are present  in the instant case including the fact that  the private defendant aids and abets the actions of a state actor; there exists a sufficiently close nexus between the state and the challenged action of the private actor such that the actions of the latter may be fairly treated as that of the state itself in the sense that the challenged action can fairly be attributed to the state; the private actor acted pursuant to state law (the USMLE is designated by state law as a licensing exam) and, by acting pursuant to state law, the private actor exercised authority possessed by virtue of the state law and made possible only because of the state law; and  the state has ceded to the private defendant the state's authority to make a determination which the state has the discretion to make by virtue of state law.[6]

As to the FSMB, the USMLE is described on the cover of the <u>Bulletin of Information</u>, and elsewhere therein, as "a joint program of the Federation of State Medical Boards  of the United States, Inc. and the National Board of Medical Examiners". In 2005, Dr. Partem's attorney at the time exchanged written communications with the FSMB concerning her complaints regarding the administration and scoring of the July, 2005 Step 3 exam. In view of the representation that the USMLE is a "joint" program of the NBME and the FSMB, the foregoing  §1983 "state actor" analysis applies with equal force to the FSMB.

---

[6] Chapter 17 of the Code makes reference only to the USMLE. However, Chapter 16 of the Code makes express reference to the NBME and the FSMB as the outside organizations exclusively authorized to give medical licensing examinations. <u>See</u>, 49 Pa. Code, §16.1 That section of the Code cites as the authority for this delegation sections 8 and 41(8) of the Act, 63 P.S. §§422.8 and 422.41(8). Neither one of those sections of the Act mentions the NMBE or the FSMB, or vest the Board with authority to delegate to those organization.

Although, perhaps, the scoring of the Step 3 portion of the exam may be within the exclusive province of the NBME, the contention that the examination is designed to contain uncounted "pretest" questions dictates that until more is known, the FSMB should be treated the same, for §1983 purposes, as the NBME.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction should be granted.

Respectfully submitted,

__FF3651_____
Frank Finch, III, Esquire (Pa. I.D. #15728)
Law Offices of Frank Finch, III
Two Penn Center, Suite 950
15th Street & Kennedy Blvd.
Philadelphia, PA  19102
Tel.: (215) 567-6996
Fax: (215) 567-1998

Date: June 5, 2006

<u>**CERTIFICATE OF SERVICE**</u>

I, Frank Finch, III, Esquire, do hereby certify that a true and correct copy of the foregoing Plaintiff's Motion for a Preliminary Injunction and Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction was served upon the defendants and/or attorneys for the defendants at the addresses listed below via hand delivery, this 5th day of June, 2006:

Neil J. Hamburg, Esquire
HAMBURG & GOLDEN, PC
1601 Market Street
Suite 3310
Philadelphia, PA 19103-1443
Attorney for Defendants NBME and FSMB

Mr. Tom Corbett
Attorney General
Commonwealth of Pennsylvania
c/o John O.J. Shellenberger
Chief Deputy Attorney General
Office of Attorney General
Civil Law Div., Eastern Regional Office
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Defendant
Commonwealth of Pennsylvania
Bureau of Professional and Occupational Affairs
State Board of Medicine

__FF3651_____
FRANK FINCH, III
Attorney for Plaintiff

Dated:  June 5, 2006