IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE M. PARTEM, M.D., | ) |
| | ) |
| Plaintiff, | )   CIVIL ACTION |
| | ) |
| v. | ) |
| | ) |
| NATIONAL BOARD OF MEDICAL | )   NO. 06-CV-2019 |
| EXAMINERS, et al., | ) |
| | ) |
| Defendants. | ) |

**<u>ORDER</u>**

AND NOW, this        day of                    , 2006,
upon consideration of the partial motion of defendants, National
Board of Medical Examiners ("NBME") and Federation of State
Medical Boards of the United States, Inc. ("FSMB"), to dismiss
the amended complaint, and any response thereto, it is hereby
ORDERED that the motion is GRANTED and Counts VI and VII of
plaintiff Leslie M. Partem's amended complaint are DISMISSED,
with prejudice, for failure to state a claim upon which relief
may be granted.

_____
William H. Yohn, Jr., J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE M. PARTEM, M.D., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | |
| ) | |
| NATIONAL BOARD OF MEDICAL ) | NO. 06-CV-2019 |
| EXAMINERS, et al., ) | |
| ) | |
| Defendants. ) | |

**MOTION OF DEFENDANTS NATIONAL BOARD OF MEDICAL EXAMINERS AND
FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INC. TO
DISMISS COUNTS VI AND VII OF PLAINTIFF'S AMENDED COMPLAINT**

For the reasons set forth in the accompanying memorandum of
law, defendants National Board of Medical Examiners and
Federation of State Medical Boards of the United States, Inc.
move to dismiss, under F.R.C.P 12(b)(6), the breach of contract
and negligence claims contained in counts VI and VII of
plaintiff's amended complaint because each of these counts fails
to state a claim upon which relief may be granted.

/s/ Craig D. Ginsburg
Neil J. Hamburg, Esquire
Craig D. Ginsburg, Esquire

Id. Nos. 32175 and 56445
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590

National Board of Medical
Examiners and Federation of
State Medical Boards of the
United States, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE M. PARTEM, M.D., | ) |
| | ) |
| Plaintiff, | )    CIVIL ACTION |
| | ) |
| v. | ) |
| | ) |
| NATIONAL BOARD OF MEDICAL | )    NO. 06-CV-2019 |
| EXAMINERS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS
NATIONAL BOARD OF MEDICAL EXAMINERS AND FEDERATION OF STATE
MEDICAL BOARDS OF THE UNITED STATES, INC. TO DISMISS COUNTS VI
AND VII OF PLAINTIFF'S AMENDED COMPLAINT**

**I.    INTRODUCTION**

After nearly a decade of trying unsuccessfully to pass the United States Medical Licensing Examination (the "USMLE™"), plaintiff Leslie Partem has concluded the problem is not her skills or ability, but rather the examination and the organizations who administer it.  She has sued the testing organizations, defendants National Board of Medical Examiners (the "NBME") and Federation of State Medical Boards of the United States, Inc. (the "FSMB"), and has blamed them for her test-taking failures.

The NBME and FSMB move, under F.R.C.P. 12(b)(6), to dismiss the breach of contract claim against the NBME in Count VI of the amended complaint and the negligence claims against the NBME and FSMB contained in count VII of the amended complaint.

These claims fail for substantially the same reason — plaintiff does not in her amended complaint and cannot (consistent with F.R.C.P 11) articulate any way in which NBME and FSMB failed to comply with their express obligations and duties set forth in the written policies and procedures concerning the United States Medical Licensing Examination (the "USMLE™"). Because plaintiff does not allege the breach of any written obligation contained in either the 2005 or 2006 Bulletin of Information, the NBME and FSMB cannot be held liable for either breach of contract or negligence under Pennsylvania law. As a result, plaintiff's causes of action for breach of contract and negligence fail on the face of the pleadings and should be dismissed.

## II.  FACTS

For general background, the NBME and FSMB incorporate the statement of facts set forth in the NBME's and the FSMB's Opposition to Plaintiff's Motion for Preliminary Injunction. Below are the facts as set forth in plaintiff's amended complaint that are directly relevant to this motion to dismiss.

The written agreement upon which plaintiff relies for both her breach of contract claim and to impose a duty for her negligence claim is the 2006 Bulletin of Information[1], attached

---

[1] It is noteworthy that plaintiff alleges her July 2005 Step 3 test is at issue — a test predating the 2006 Bulletin.  The 2005

to the amended complaint as Exhibit E.  That document sets forth the respective obligations of plaintiff and the NBME.  <u>See</u> amended complaint ¶91.  The Bulletin explicitly addresses each of plaintiff's complaints regarding the grading and procedures surrounding her test.  The Bulletin advises exam takers of the following:

  1.  Portions of the exam are not scored as they are included for investigatory and measurement reasons.  <u>See</u> Amend. Comp., Exhibit E at page 27 (Bates numbered N&F 00138 in the NBME & FSMB Opp. To Preliminary Injunction, Exhibit 7);

  2.  In the event of a technical problem that prevents an exam taker from completing the exam, the problem will be investigated and, "…if necessary, arrangements will be made to allow [the exam taker] to test at a later date at no additional charge."  <u>See</u> Amend. Comp., Exhibit E at page 25 (Bates numbered N&F 00136 in the NBME & FSMB Opp. To Preliminary Injunction, Exhibit 7); and

  3.  An avenue for score rechecks is available if an examinee makes a formal request and payment of a fee.  The Bulletin notes that "…a change in your score or in your pass/fail outcome based on a

---

Bulletin of Information contains substantially the same relevant information as the 2006 Bulletin.

4

recheck is an extremely remote possibility." <u>Id.</u>
at page 29 (Bates numbered N&F 00140 in the NBME
& FSMB Opp. To Preliminary Injunction, Exhibit
7).

Because plaintiff does not allege in her amended
complaint that the NBME and the FSMB breached any obligation in
the Bulletin, the relevant provisions of which are discussed
above, plaintiff's amended complaint does not provide any basis
for her requested judicial "back-door" to licensure.

## III. ARGUMENT

When deciding a Rule 12(b)(6) motion, a court must
accept the allegations in a complaint as true and view them in
the light most favorable to plaintiff. <u>See</u> <u>Schrob v. Catterson</u>,
948 F.2d 1402, 1405 (3d Cir. 1991). The court should dismiss
the complaint if, based on the allegations, it appears plaintiff
can prove no set of facts entitling her to relief for the claims
alleged. <u>See</u> <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73
(1984). A court is not bound by plaintiff's legal conclusions
or unwarranted factual inferences. <u>See</u> <u>Morse v. Lower Merion</u>
<u>School Dist.</u>, 132 F. 3d 902, 906 (3d Cir. 1997). "A court may
also consider any document referenced in or integral to the
complaint on which plaintiff's claim is based." <u>In re</u>
<u>Burlington Coat Factory Securities, Lit.</u>, 114 F.3d 1410, 1426
(3d Cir. 1997). This includes "matters of public record, items

5

appearing in the record of the case and exhibits attached to the complaint. . . ."  <u>Catagnus v. Aramark Corp.</u>, 235 F.Supp.2d 413, 416 (E.D. Pa. 2002).

**A.   Plaintiff's Claim for Breach of Contract Fails to State a Cause of Action Because Plaintiff Does Not and Cannot Allege a Breach of any Provision of the Bulletin.**

Where a complaint fails to plead each element of a cause of action, F.R.C.P. 12(b)6 requires that the Court dismiss that cause of action for failure to state a claim.  <u>See Campbell v. City of San Antonio</u>, 43 F. 3d 973, 975 (5th Cir. 1995).

To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.  <u>See Gorski v. Smith</u>, 812 A.2d 683, 692 (Pa.Super. 2002), <u>appeal denied</u>, 579 Pa. 692, 856 A.2d 834 (2004).  Where a contract is appended to plaintiff's complaint (or amended complaint, as in this case) and is therefore incorporated in parties' pleadings, it may properly be considered on motion to dismiss for failure to state claim.  <u>See Stepan Co. v. Winter Panel Corp.</u>, 948 F.Supp. 802 (N.D.Ill. 1996) (a contract appended to the complaint may be considered in a 12(b)6 motion).

In this case, plaintiff is asking this Court to rewrite the professional standards by which the NBME and FSMB develop, administer and score the USMLE™ and, in turn, to lower

the minimum passing standard recommended by the NBME.  She wants to pass the test without achieving a passing score.  She wants to have questions that she does not like declared improper; and she wants material that was not utilized in determining her reported score, but that she believes she answered correctly, to be scored in her favor.  None of these requests is remotely supported by law.

The NBME and FSMB, which create and administer the USMLE™, serve the same function as medical school faculty do in making academic judgments.  Courts have historically refrained from second-guessing such academic and medical expertise and judgments.

For example, in Regents of University of Michigan v. Ewing, 474 U.S. 214 (1985), the University of Michigan dismissed a medical school student because he had failed the "Part I" examination given at that time by the National Board of Medical Examiners, the passage of which the University of Michigan Medical School required as a mandatory prerequisite for continued enrollment in its M.D. program.  The student claimed that other students were permitted to retake the exam and that his dismissal was arbitrary and capricious and violated his "substantive due process rights" under the Fourteenth Amendment. In refusing to substitute its academic judgment for the judgment

of the faculty of the University of Michigan (which relied upon
an NBME examination), the Supreme Court stated:

> When judges are asked to review the substance of
> a generally academic decision . . . they should
> show great respect for the faculty's professional
> judgment. Plainly, they may not override it
> unless it is such a substantial departure from
> accepted academic norms as to demonstrate that
> the person or committee responsible did not
> actually exercise professional judgment.

Regents of University of Michigan, 474 U.S. at 225.

The Supreme Court recognized the need for judicial
restraint when faced with challenges to academic decisions:

> If a "federal court is not the appropriate forum
> in which to review the multitude of personnel
> decisions that are made daily by public
> agencies," Bishop v. Wood, 426 U.S. at 349, 96
> S.Ct. at 2079 . . . far less is it suited to
> evaluate the substance of the multitude of
> academic decisions that are made daily by faculty
> members of public educational institutions --
> decisions that require "an expert evaluation of
> cumulative information and [are] not readily
> adapted to the procedural tools of judicial or
> administrative decision-making." Board of
> Curators, Univ. of Missouri v. Horowitz, 435 U.S.
> at 89-90, 98 S.Ct., at 954-955.

Regents of University of Michigan, supra, 474 U.S. at 226. [2]

In Connelly v. University of Vermont and State
Agricultural College, 244 F. Supp. 156 (D.Vt. 1968), the

---

[2] The Regents of University of Michigan case involved a state
actor; that is, a public institution subject to constitutional due
process and equal protection restraints. One would expect courts to
exercise even greater restraint in second-guessing private
institutions and non-profit corporations. See, e.g., Swartley v.
Hoffner, 734 A.2d 915, 921 (Pa.Super. 1999)(refusing to second-guess
denial of Ph.D. by Lehigh University, a private university).

District Court refused to substitute its judgment for the decision by the university that a medical student should be required to pass a pediatrics-obstetrics course in order to obtain a medical degree, holding that:

> The rule of judicial nonintervention in scholastic affairs is particularly applicable in the case of a medical school.  A medical school must be the judge of the qualifications of its students to be granted a degree; Courts are not supposed to be learned in medicine and are not qualified to pass opinion as to the attainments of a student in medicine.

Connelly, 244 F. Supp., at 160-161.  Similarly, in Jansen v. Emory University, 440 F. Supp. 1060 (N.D. Ga. 1977), aff'd, 579 F.2d 45 (5th Cir. 1978), the court upheld a private university's dismissal of a dental student for academic reasons, declining to adjudicate the fairness of grades because "Courts are . . . no more qualified in dentistry than in medicine," Jansen, supra, at 1063.

> These cases make clear that

> University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.

Regents of University of Michigan, supra, 474 U.S. at 225, n. 11 (citation omitted).

These principles of academic deference are equally applicable to the expertise of the NBME and FSMB, which develop and administer the licensing examinations that ensure that only

doctors who have demonstrated sufficient skill and competence are permitted to practice medicine on patients.   These examinees, once licensed, will hold patients' lives and health in their hands.   Plaintiff has not and cannot demonstrate that the minimum standards set by the hundreds of highly skilled professionals who have created the USMLE™ should be reset by this Court.

In light of the judicial deference that is accorded academic and medical judgments, the Pennsylvania Superior Court has held that to state a breach of contract claim against a private academic organization, a plaintiff must point to the academic organization's failure to meet "specific terms in brochures, course offering bulletins, and other official statements, policies and publications of the institution." Swartley v. Hoffner, 734 A.2d 915, 919 (Pa.Super. 1992); Cavaliere v. Duff's Business Institute, 605 A.2d 397, 404 (Pa.Super. 1992).   Swartley involved a breach of contract claim against a private university and Cavaliere a breach of contract claim against a trade school.   In each case, the Superior Court rejected breach of contract claims because the plaintiffs failed to show that the academic organization violated any term in any official written document.   Swartley, 734 A.2d at 919; Cavaliere, 605 A.2d at 404.

In this case, plaintiff alleges that the contract at issue is the 2006 Bulletin, which plaintiff attached to the amended complaint as Exhibit E.   There is simply no allegation in the amended complaint that the NBME or the FSMB violated any specific provision of the Bulletin.   Instead, the three purported breaches of contract that plaintiff asserts are:

(1)   A breach of the duty to rescore plaintiff's test to give plaintiff credit for two questions, although as plaintiff noted at ¶43 of the amended complaint, the NBME identified the questions at issue as unscored, pre-test material were <u>never</u> counted toward plaintiff's score.  <u>See</u> amended complaint ¶¶42, 43, 45 and 92-93;

(2)   A breach of contract for failing plaintiff because her test score was within the standard error of measurement.  <u>See</u> amended complaint ¶¶36 and 92-93; and

(3)   Allowing computer malfunctions in the test administration to affect plaintiff's score.  <u>See</u> amended complaint ¶¶39, 40 and 92-93.

None of these alleged "breaches" violates the terms of the Bulletin, and therefore, the amended complaint fails to state a claim for breach of contract.   Each alleged breach is addressed below.

11

> **1.    The two test questions that plaintiff argues should be rescored were never counted in her failing grade on the July, 2005 test.**

In order to be liable for a breach of contract, the NBME must have breached an obligation that it undertook in the written Bulletin. Plaintiff alleges the NBME had an obligation to rescore "two examination items" that she claims she answered correctly. See amended complaint, ¶43. Her own pleading illustrates why her score was not changed — these "items" were never counted toward her failing grade in the first place. See amended complaint ¶¶43 and 45; Exhibit D to the amended complaint.

The NBME certainly did not breach any obligation contained in the 2006 Bulletin by including unscored, pre-test materials in the examination. The Bulletin, Exhibit E to the amended complaint, provides at page 27[3]:

> Some examination materials are included in the USMLE to enhance the examination system and to investigate the measurement properties of the examinations. Such materials are not scored.

Based on her own pleading, plaintiff was advised of the possibility that unscored, pre-test material would be included on her exam and plaintiff admits that the NBME confirmed that the two questions at issue were not counted toward her failing

---

[3] This same statement appears at page 26 of the 2005 Bulletin. See NBME/FSMB Opp. to Injunc., Exhibit 6 at N&F 00097.

12

score.   See amended complaint ¶¶43 and 45; Exhibit D to the amended complaint.

There is nothing in the Bulletin that requires the NBME to give plaintiff (or any other examinee) credit for her answers to unscored, pre-test questions that did not count toward her or any other examinee's score.

### 2. The Bulletin does not require plaintiff to pass examinees who failed the examination, but were within the standard error of measurement for the test.

Plaintiff argues she passed the July 2005 Step 3 examination because her score was within the three to seven point standard error of measurement ("SEM") for that examination.   See amended complaint ¶¶36, 47 and 92-93.[4]

Plaintiff can cite to no section of the Bulletin that entitles her to pass simply because she failed with a score that was within the standard error of measurement.

---

[4] Plaintiff misunderstands the true nature of the SEM by presuming that her true level of performance is higher than her reported score.   The SEM is a statistical construct that estimates how much an examinee's score might vary - higher or lower - if there were a way to test repeatedly that same individual with comparable sets of test items.   If plaintiff's argument were accepted, the passing score would necessarily be substantially lower.   See April 26, 2006, letter St. John to Finch (Opp. To Injunc. Exh. 5, Bates Nos. N&F 00065-N&F 00066)(responding to Plaintiff's SEM argument).

> **3.  The Bulletin provides that plaintiff's sole remedy for any computer malfunction or administrative error was a waiver of fees for her next testing session — a remedy that the FSMB provided her.**

Plaintiff alleges in ¶¶39 and 92-93 of her amended complaint that she protested the "defects in the computer equipment. . . and the procedure used in administering" the USMLE™.  The Bulletin makes clear, however, that her sole remedy for such technical disruptions to her testing, if any, is a waiver of fees at a later test date.  The 2006 Bulletin, Exhibit E to the amended complaint, states in pertinent part at page 25:

> However, it is possible that a technical problem may occur that does not permit you to complete your examination.  In that event, contact the NBME or registration entity in writing.  Your problem will be thoroughly investigated, and if necessary, arrangements will be made to allow you to test at a later date at no additional charge.

Similarly, where there are administrative failures, the Bulletin directs examinees to send a written complaint to the NBME or registration entity who will investigate the examinee' concerns.  See amended complaint, Exhibit E, page 34.[5]

Plaintiff does not plead in her amended complaint that the NBME or the FSMB refused to allow her to re-take the test or waive her fee on a retest.[6]  Nor does plaintiff plead that the

---

[5] The 2005 Bulletin contains the identical language.  NBME/FSMB Opp. To Injunc., Exhibit 6, pg. N&F 00104.

[6] In fact, the FSMB provided her with that remedy and allowed her to take the test free of charge in December 2005 — a test she again

NBME/FSMB actually failed to investigate her complaints.[7]  On the contrary, she attaches letters to her complaint evidencing that the NBME actually investigated her complaints and found them to lack merit.  <u>See</u> Exhibits B and D attached to the amended complaint.

Since plaintiff alleges no breach of any written provision in the Bulletin concerning any claimed computer or administrative failure, her breach of contract allegations concerning these matters also fail.

**C.  Plaintiff's Negligence Claim In Count VIII Of Her Amended Complaint Also Fails to State a Claim.**

Plaintiff's negligence cause of action fails for two reasons: (1) because of the deference accorded academic decision-making, any claim for negligence must arise from a breach of a duty imposed explicitly from the written policies and procedures of the academic organization and, as discussed above, plaintiff alleges no breaches of any such provisions; and (2) plaintiff's negligence claim is barred by the "gist of the action" doctrine.

---

failed.  <u>See</u> <u>generally</u> Exhibit 5 to NBME's Opposition to the Motion for Injunction, and <u>specifically</u> Exhibit 5 at page N&F 00053.
    [7] When read in the context of her whole complaint, plaintiff's allegation in ¶93 of the amended complaint that the NBME failed "to reevaluate and rescore" plaintiff's examination is not really an allegation that the NBME did not look into plaintiff's arguments, because plaintiff knows factually that it did.  It is really an allegation that the NBME did not agree with plaintiff's complaints and had an obligation to change her score because plaintiff believes her complaints were justified.

15

**1.   Plaintiff's negligence cause of action fails as a matter of law because she alleges no breach of any duty imposed by the Bulletin.**

Plaintiff asserts that NBME and FSMB failed to "exercise reasonable care in the administration and scoring of the Step 3 portion of Plaintiff's USMLE." See amended complaint at ¶96. Specifically, she alleges that NBME and FSMB did not: (1) administer the test properly (¶97); (2) reevaluate and rescore her examination in the manner she requested (¶98); and (3) accept her "expert's" opinion about several examination questions (¶100). Plaintiff's negligence claim is an invitation for this Court or a jury to second-guess the hundreds of experts who develop the USMLE™.

Pennsylvania law does not permit such a negligence claim. To state a negligence claim, a plaintiff must plead:

> (1) a duty, recognized by law, requiring the actor to conform to a certain standard with respect to the injured party; (2) a failure of the actor to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage . . .

Fritz v. Glen Mills School, 894 A.2d 172, 176 (Pa.Cmwlth. 2006). In Pennsylvania, because of the public policy requiring judicial deference to academic evaluations, the law does not recognize an actionable duty of academic decision-makers other than to comply with the express terms of a written contract.

16

In <u>Cavaliered v. Duff's Business Institute</u>, 605 A.2d 397 (Pursuer. 1992), the plaintiff sued a private court reporting trade school for both breach of contract and negligence.  The Pennsylvania Superior Court surveyed case law nationwide, recognized the deference that courts give to academic judgments, and sustained the dismissal of both the breach of contract and negligence counts because the plaintiff did not plead and could not prove that there was a breach of any identifiable promise or representation contained in the school's written materials:

> We are persuaded by the reasoning employed by the many courts that have refused to recognize a general cause of action for educational malpractice, whether framed in terms of tort or breach of contract, where the allegation is simply that the educational institution failed to provide a quality education.  It would be unwise to inject the judiciary into an area where it would be called upon to make judgments despite often insurmountable difficulties both in the formulation of an adequate standard of care and in finding a causal link between the alleged breach and the alleged damages.
>
> . . .
>
> The difficulty with the instant lawsuit is simply that plaintiffs' complaint amounts to a general allegation of a lack of a quality education, without more.  The complaint does not allege that there was any specific undertaking, in the student handbook and catalog or otherwise, to provide a specific course of instruction which was not provided.  There is no allegation that any of the courses which the handbook included in the school's curriculum were not offered.  Nor does the complaint allege that the representations made by the Institute to the effect that it was approved by the NSRA or PHEA were false.  Finally, there is no pleading of any other specific

misrepresentation or failure to perform a contractual
undertaking.   . . .   Such a complaint is clearly
insufficient.

Cavaliered v. Duff's Business Institute, 605 A.2d at 403-404.

In this case, as discussed in the breach of contract
section above, plaintiff's amended complaint contains no
allegation that the NBME or FSMB breached any specific promise
or representation made in any written publication.  Accordingly,
plaintiff's cause of action for negligence fails to state a
claim upon which relief may be granted.

> **2.   Plaintiff's cause of action is actually rooted in
> contract and is, therefore, barred by the gist of
> the action doctrine.**

In Pennsylvania, "the gist of the action doctrine"
precludes a party from raising tort claims where the essence of
the claim actually lies in a contract that governs the parties'
relationship.  Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d
710, 719 (Pa.Super. 2005) (holding breach of contract actions
are not to be recast as tort actions).  "The doctrine is
designed to maintain the conceptual distinction between breach
of contract claims and tort claims ···· [and] preclude[s]
plaintiffs from recasting ordinary breach of contract claims
into tort claims." Id. (quoting eToll, Inc. v. Elias/Savion
Adver., Inc., 811 A.2d 10, 14 (Pa.Super.2002)).  The Third
Circuit explained:

> Courts differentiate tort from contract claims, in
> part, by the source of the duty imposed on the

defendant: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals."

Chemtech International, Inc. v. Chemical Injection Technologies, Inc., 170 Fed. Appx. 805, 809 (3d Cir. 2006) (footnote omitted) (citing eToll, supra, 811 A.2d at 14 and Sullivan v. Chartwell Inv. Partners, LP, 873 A. 2d 710, 719 (Pa. Super 2005)).

Count VII asserts that NBME and FSMB were negligent in (1) their administration and scoring of the plaintiff's step 3 portion of the USMLE™ [amended complaint at ¶97]; and (2) their "refusal to reevaluate and rescore the Step 3 portion of Plaintiff's USMLE…" [amended complaint at ¶98].  These duties are not only identical to those contractual duties that plaintiff alleges that the NBME breached in ¶¶39, 92-93, and 93 of the amended complaint, but, as explained in Cavaliere, because of the judicial deference accorded academic decision-making, the only actionable duties that an academic decision-maker has are set forth explicitly in its written policies and procedures.  Cavaliere v. Duff's Business Institute, 605 A.2d at 403-404.

Because plaintiff's negligence cause of action arises not from any social policy, but rather solely from claimed "breaches of duties imposed by mutual consensus agreements," it

19

is, as a matter of law, barred by the gist of the action
doctrine.

**IV.   CONCLUSION**

For each of the foregoing reasons, plaintiff's causes
of action for breach of contract and negligence fail to state a
claim upon which relief could be granted and, therefore, Counts
VI and VII of the amended complaint should be dismissed with
prejudice.

Respectfully submitted,


/s/ Craig D. Ginsburg
Neil J. Hamburg, Esquire
Craig D. Ginsburg, Esquire

Id. Nos. 32175 and 56445
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590

Attorneys for Defendants
National Board of Medical
Examiners and Federation of
State Medical Boards of the
United States, Inc.

## CERTIFICATE OF SERVICE

I, Craig D. Ginsburg, certify that on July 20, 2006, the foregoing Motion to Dismiss Counts VI and VII of Plaintiff's Complaint, Memorandum of Law in Support of the Motion to Dismiss, and proposed order have been filed electronically and are now available for viewing and downloading from the Court's Electronic Case Filing System. I further certify that I served a copy of the foregoing motion, memorandum, and proposed order by regular mail on:

Frank Finch, III, Esquire
Two Penn Center Plaza, Suite 950
15th & John F. Kennedy Boulevard
Philadelphia, PA  19102

Beth Ann Smith, Esquire
Office of the Attorney General
Commonwealth of Pennsylvania
Civil Law Division, Eastern Regional Office
21 South 12th Street
Philadelphia, PA  19107-3603

/s/ Craig D. Ginsburg
Craig D. Ginsburg